FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 22, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SELIA R.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant. | No.   1:25-cv-3196-EFS <br><br> **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS: REMANDING FOR PARTIAL PAYMENT OF BENEFITS FOR A CLOSED PERIOD AND FOR FURTHER PROCEEDINGS AS TO REMAINING PERIOD** |

Five Administrative Law Judges (ALJ) have reviewed Plaintiff Selia R.'s request for Title 16 benefits based on physical and mental impairments. The most recent ALJ again erred when evaluating the evidence regarding Plaintiff's hands and mental health. A remand for

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

payment of benefits is warranted for the period January 9, 2013–April 5, 2017, while a remand for further proceedings, including physical and psychological consultative examinations, is directed for the remaining period of April 6, 2017–August 5, 2024.

## I.    Background

On January 9, 2013, at the age of 43, Plaintiff filed for disability based on back pain, depression, and anxiety, and she later supplemented her claim with reports of hand pain and numbness.[2] Several administrative hearings have been held, and her application for disability has been repeatedly denied.[3] Plaintiff testified at each of

---

[2] Administrative Record (AR) 283–95, 96, 340, 358.

[3] AR 120–42 (July 2015: ALJ's disability denial); AR 143–48 (Feb. 2017: Appeals Council's remand); AR 12–35 (April 2018: ALJ's disability denial); AR 1024–60 (April 2020: district court's remand, EDWA No. 1:19-cv-3041-FVS); AR 1066–100 (Dec. 2021: ALJ's disability denial); AR 1101–04 (June 2022: Appeals Council's remand); AR 1727–64 (Oct. 2023: ALJ's non-disability decision); AR 1765–67 (May 2024: federal

DISPOSITIVE ORDER - 2

the administrative hearings in 2015, 2017, 2021, 2023, and 2025, providing testimony about her hand symptoms, hip and back pain, anxiety, panic attacks, nightmares, and difficulty concentrating and being in public, and her treatment for such conditions.[4] The most recent hearing was held in July 2025 with ALJ Malcolm Ross.[5] Plaintiff testified that she continues to be anxious in public, has difficulty standing for longer than 20 minutes and with sleeping, and has pain in her hips, thumb, hand, and now elbow.[6]

After the hearing, the ALJ issued a partially favorable decision, finding Plaintiff disabled when she turned 55 and changed age categories on August 6, 2024, per Medical-Vocational Rule 202.01.[7] The

---

court remand pursuant to stipulation of parties); AR 1770–71 (July 2024: direction from Appeals Council on remand).

[4] AR 49–75, 858–81, 1915–32, 1705–26.

[5] AR 1705–26.

[6] AR 1711–17.

[7] AR 1667–90. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

DISPOSITIVE ORDER - 3

ALJ found Plaintiff's alleged symptoms were not fully supported and, as to the medical opinions, gave:

- significant weight to the light-work opinion of Gordan Hale, MD, except little to no weight to his manipulative and environmental restrictions.

- little weight to the mental-health opinions of Emily Shoemaker, LMFT, MHP; Jesse McClelland, MD; and Elsa Haloman, MD.

- partial weight to the mental-health opinion of Patricia Kraft, PhD, except little weight to her opinion that Plaintiff needs additional time adapting to routine and help with goals and planning.

- little to no weight to the mental-health assessment of Gabriela Mondragon, MSW.[8]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since January 9, 2013, the date of application.

---

[8] AR 1676–87.

DISPOSITIVE ORDER - 4

- Step two: Plaintiff had the following medically determinable severe impairments: obesity, degenerative disc disease, carpal tunnel syndrome status post release, status post bilateral trigger finger release, depressive disorder, anxiety disorder, and posttraumatic stress disorder (PTSD).

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work with postural and environmental limitations and the following additional limitations:

  > frequently handle and finger bilaterally; . . . simple, routine, and repetitive work; . . . occasional contact with coworkers and supervisors and with superficial, incidental contact with the public; occasional, routine workplace changes; and with work goals set by others.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, education, work history, and age prior to August 6, 2024, Plaintiff could perform work that existed in significant numbers in the national economy, such as housekeeping cleaner, small products assembler, and

DISPOSITIVE ORDER - 5

office helper. Beginning on August 6, 2024, when Plaintiff's age category changed to 55 years old, there were no jobs that exist in significant numbers in the national economy that Plaintiff can perform.[9]

Plaintiff timely requested review of the ALJ's nondisability decision for the period January 9, 2013, to August 5, 2024.[10]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[11] and such error impacted the nondisability determination.[12] Substantial evidence is

---

[9] AR 1667–90.

[10] ECF No. 1.

[11] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[12] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

DISPOSITIVE ORDER - 6

"more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13]

## III.  Analysis

Plaintiff argues the ALJ erred when evaluating the medical opinions and her subjective complaints, resulting in an RFC that did not include an occasional-fingering limitation, additional supervision, and productivity limitations. The Commissioner argues that Plaintiff's challenges amount to an improper request to reweigh the evidence, the ALJ committed no consequential error, and substantial evidence

---

[13] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

supports the ALJ's decision. As is explained below, the ALJ's errors when evaluating Dr. Hale's occasional-fingering limitation and the mental-health opinions impacted the ALJ's denial of disability for the at-issue period.

## A. Manipulation Limitation: Plaintiff establishes consequential error.

Rather than utilize Dr. Hale's occasional-fingering limitation, the RFC allowed for frequent bilateral fingering and handling. Plaintiff argues the RFC is not supported by substantial evidence and is based on a misevaluation of Dr. Hale's manipulation limitation and Plaintiff's reported hand symptoms. The Commissioner argues the ALJ's frequent bilateral fingering and handling limitation is supported by substantial evidence. As is explained below, the ALJ's errors when evaluating Dr. Hale's occasional-fingering limitation and Plaintiff's reported hand symptoms resulted in an incomplete RFC.

### 1. Standards for medical opinions and Plaintiff's reports

When a treating physician's or evaluating physician's opinion is *not* contradicted by another physician's opinion, it can be rejected only for "clear and convincing" reasons, and when it *is* contradicted, it can

DISPOSITIVE ORDER - 8

be rejected for "specific and legitimate reasons" supported by substantial evidence.[14] A reviewing physician's opinion can be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source can be rejected for specific and germane reasons supported by substantial evidence.[15]

As to Plaintiff's reported symptoms, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect her ability to work.[16] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of symptoms include: (1) objective medical evidence; (2) daily activities; (3) the location, duration, frequency, and intensity of pain or other symptoms; (4) factors that precipitate and aggravate the symptoms; (5) the type, dosage, effectiveness, and side effects of any medication the claimant

---

[14] When Plaintiff filed her disability application, a former regulation applied to assessing medical-opinion evidence. *See* 20 C.F.R. § 416.927; *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010).

[15] *Turner*, 613 F.3d at 1224.

[16] 20 C.F.R. § 416.929(c).

DISPOSITIVE ORDER - 9

takes or has taken to alleviate pain or other symptoms; (6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and (7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[17] If the ALJ finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[18] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[19]

---

[17] *Id.* § 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:25, Consideration of objective medical evidence (2025).

[18] 20 C.F.R. § 416.929(c); *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

[19] *Smartt*, 53 F.4th at 499.

DISPOSITIVE ORDER - 10

### 2.    Treatment and reported hand symptoms

In June 2013, Plaintiff sought treatment for persistent, aching right hand pain for two weeks, primarily in her thumb and base of her thumb, which would "pop," and the pain was aggravated by making a fist and relieved with modified activity or heat.[20] A normal grip strength and tone was observed with tenderness at the base of the thumb and reduced range of thumb movement.[21] A month later, Plaintiff still reported pain and popping in the thumb and popping of the thumb joint was observed.[22] A thumb splint was provided and a steroid joint injection recommended if symptoms continued.[23] Symptoms continued, with popping of the thumb again observed.[24] Late August 2013, Plaintiff was observed with crepitus and limited flexion and extension of her right thumb and crepitus at the

---

[20] AR 614.

[21] AR 614.

[22] AR 612–13.

[23] AR 613.

[24] AR 650–51.

DISPOSITIVE ORDER - 11

metacarpophalangeal joint and she was given a steroid injection for her trigger finger/thumb.[25]

Plaintiff reported experiencing numbness in her right arm and hand about nine months later.[26] In September 2014, she had a positive Tinel's sign on her right; she was encouraged to wear a wrist splint and advised that nerve conduction testing and surgery may be needed.[27] Nerve conduction testing in November 2014 revealed median nerve compromise at or near the right wrist (severe) and left wrist (mild); she was diagnosed with bilateral carpal tunnel affecting the sensory and motor components.[28] Surgery was recommended for the right hand.[29] During an examination a month later, she had reduced strength in the thumb and index finger; x-rays revealed possible osteophyte and

---

[25] AR 655.

[26] AR 637.

[27] AR 638.

[28] AR 655.

[29] AR 655.

DISPOSITIVE ORDER - 12

sesamoid bones, which could be causing pain.[30] At an orthopedic appointment in January 2015, Plaintiff was observed with "left thumb trigger causing A1 pulley tenderness, clicking, and locking, as well as impairment," and with "severe right carpal tunnel syndrome causing pain, numbness, tingling, as well as impairment."[31] Surgery was again recommended for her right hand, and a corticosteroid injection recommended for the left thumb.[32]

Plaintiff underwent these procedures later that month.[33] At her follow-up appointment, Plaintiff still did not have full range of motion in her right hand and limited hand activity was recommended.[34] In April 2015, she still reported right wrist pain and was observed with slight decrease in the vibratory sensation in the right hand.[35]

---

[30] AR 671.

[31] AR 659.

[32] AR 659.

[33] AR 656.

[34] AR 1498.

[35] AR 856.

At the administrative hearing in May 2015, she testified that her right hand was still weak and painful although with less numbness, she experienced difficulty holding objects, and her left thumb would get swollen and painful.[36] At a March 2016 appointment, Plaintiff again complained of hand pain and limitations, including that her right middle finger would get stuck in the flexed position and then painfully "pop," and she had pain and numbness in her left hand, causing her to drop objects.[37] Locking and popping of her right middle finger was observed along with a mid-palm nodule on her right hand and a positive Phalen's test on her right.[38] The provider found the examination consistent with trigger finger on the right middle finger and carpal tunnel of the left hand; it was recommended that Plaintiff wear volar wrist/hand splints and a finger splint for her right middle finger.[39]

---

[36] AR 59–60, 73.

[37] AR 849.

[38] AR 850.

[39] AR 850.

DISPOSITIVE ORDER - 14

Months later, Plaintiff was again observed with her right middle finger getting stuck in the flexed position and popping; she had been wearing the finger splint "off and on," finding it unhelpful.[40] She was referred for a steroid injection for her right finger and carpal tunnel surgery on her left hand.[41] The recommended surgery and injection were performed in November 2016.[42] At the post-op appointment in mid-November 2016, she still did not have full range of motion or strength in her left hand and it was recommended that she limit activity until she achieved full range of motion and strength in her left hand.[43]

At an appointment on April 6, 2017, for neck and left shoulder pain related to moving a mattress, Plaintiff reported that "she has not [sic] hand complaints at this time," and her grip strength was 5/5

---

[40] AR 846.

[41] AR 847.

[42] AR 809.

[43] AR 1491–92.

DISPOSITIVE ORDER - 15

bilaterally.[44] But then at the administrative hearing in October 2017, she wore braces on both wrist/hands and she testified that she still has trigger finger and she experiences numbness, tingling, and pain in her right hand if she uses it too long.[45] Likewise, at the hearing in October 2021, Plaintiff testified that she wears braces on her wrists and finger splints at night, when she drives, and during the day if she has hand/finger pain.[46] She stated that her right finger, thumb, and wrist start hurting if she uses them too much and her finger gets stuck.[47]

Plaintiff did not seek further medical treatment for hand pain until March 2022 during which she reported pain at the base of her right thumb and index finger, numbness and tingling of all digits of the right hand, diffuse hand pain especially with gripping, and hand weakness after prolonged use.[48] She reported that the past steroid

---

[44] AR 841.

[45] AR 870–72.

[46] AR 1915–16, 1924.

[47] AR 1923.

[48] AR 1659.

DISPOSITIVE ORDER - 16

injection to her right middle finger and the finger splint had helped, and she had not been wearing the braces at night.[49] She was observed with positive tenderness with palpation of the base of the right index finger and thumb, along with trigger finger of the right index finger and a positive Tinel's on her right.[50] It was suggested that she wear the wrist brace at night and a finger splint for her index finger, along with taking over-the-counter medication, and that if symptoms persist, she could have another steroid injection or be referred to an orthopedic.[51] In March 2023, Plaintiff endorsed right hand pain and numbness, which the provider noted as "persistent symptoms consistent with carpal tunnel syndrome."[52] The provider recommended volar splints

---

[49] AR 1659.

[50] AR 1661.

[51] AR 1661.

[52] AR 1617, 1678. It is unclear if this is a treatment record from March 2023 or a reprint of a prior treatment appointment. Nonetheless, the ALJ considered this to be a treatment appointment in March 2023, and so the Court likewise treats it as such. AR 1678.

DISPOSITIVE ORDER - 17

and continuing medication and to obtain nerve imaging if her symptoms persist.[53]

During the June 2023 hearing, Plaintiff testified that both of her hands experience numbness and tingle at night or when she uses them too much, although her right hand hurts more.[54] She explained that after the carpal tunnel surgery, she had relief for a period but then her hands started hurting and tingling again; she wears a brace if she drives for a long time; and she has difficulty holding onto a shopping cart on uneven surfaces.[55]

### 3.    Dr. Hale's Opinion

In September 2013, Dr. Hale reviewed the record and opined that Plaintiff could perform light work with occasional fingering with her right hand because of her right thumb trigger-finger symptoms, noting

---

[53] AR 1617.

[54] AR 1940–43.

[55] AR 1940–41, 1943.

that they "are seen as likely to resolve."[56] Dr. Hale provided the only physical medical source report of record.

4. The ALJ's findings re: hand limitations and symptoms

The ALJ gave "significant weight" to Dr. Hale's light-work opinion but discounted his occasional-fingering limitation because it "appear[s] excessive compared to his explanation which lack[s] consistency with the treatment, workup findings, and physical examinations."[57] The ALJ stated that Plaintiff "underwent limited treatment until quite recently, where she was noted with primarily subjective symptoms, had full grip strength, and was started on only conservative treatment."[58] As a result, the ALJ limited Plaintiff to frequent, not occasional, bilateral handling and fingering.[59]

When assessing Plaintiff's reported hand symptoms, the ALJ found them inconsistent with the evidence because (1) her symptoms

[56] AR 111–13.

[57] AR 1684.

[58] AR 1685.

[59] AR 1685.

were episodic and responded well to treatment, (2) Plaintiff did not seek treatment for hand symptoms between November 2016 and March 2022, (3) she gave inconsistent statements as to whether she wore her splints, (4) she often had full grip strength and negative tests, (5) Plaintiff did not seek follow-up care after March 2023 for her hands, and (6) her reported symptoms are inconsistent with her ability to drive, move a mattress, go to the gym, and walk her dog.[60]

### 5.    Analysis of the ALJ's findings

The ALJ failed to fairly consider that Plaintiff's hand pain and symptoms shifted depending on which fingers and hands were impacted and the course of treatment. As a result, the ALJ's findings about episodic complaints and responsiveness to treatment are not fairly applied to the entire period.[61]

For instance, Plaintiff did not report any hand symptoms until May 20, 2013—two weeks before the June 3, 2013 appointment at

---

[60] AR 1678–79, 1683.

[61] *See Smith v. Kijakazi*, 14 F.4th 1108, 1113–16 (9th Cir. 2021) (requiring that the progression of an impairment must be considered).

DISPOSITIVE ORDER - 20

which Plaintiff reported trigger finger symptoms for the past two weeks.[62] Accordingly, there is no basis in the record to support an occasional-fingering limitation before May 20, 2013. Therefore, there is no consequential error by the ALJ as to the period of January 9, 2013–May 19, 2013.

However, the ALJ's errors consequentially impacted the RFC for the period of May 20, 2013, to April 5, 2017. Contrary to the ALJ's finding otherwise, Plaintiff's hand symptoms did not fully resolve after the first steroid injection to Plaintiff's thumb and Dr. Hale's review of the record. Instead, as mentioned above, in 2014, Plaintiff resumed experiencing hand pain and other symptoms, continued to seek treatment for such, including more injections and carpal tunnel release surgery on each hand. It was not until April 2017 that Plaintiff told a treating provider that she did not have any complaints as to her hands.

---

[62] AR 614. Although Plaintiff did have numbness in her entire left upper extremity and tingling in her left second finger in November 2012, this was assessed to be related to left shoulder impairment, not carpal tunnel or trigger finger. AR 597–98.

The treatment during this 2013–17 period—with two surgeries and three steroid injections—was not conservative nor limited. Moreover, the symptoms observed during this period by treating providers are consistent with the symptoms for which Dr. Hale imposed an occasional-fingering limitation. Therefore, the ALJ's decision to discount Dr. Hale's occasional-fingering limitation and Plaintiff's reported hand symptoms during this period is not supported by substantial evidence. Moreover, the ALJ failed to clearly explain why Plaintiff's ability to drive a vehicle for child or household purposes was inconsistent with her reported hand symptoms, as Plaintiff reported that she wore braces/splints on her hands when driving, as needed.[63] Likewise, the ALJ failed to clearly explain how Plaintiff's mental-health therapy goals in 2023 of walking her dogs short distances or enjoying family BBQs was inconsistent with her hand symptoms.[64]

---

[63] AR 1916.

[64] AR 1622, 1992 (noting that Plaintiff was "progressing" toward her goal of "going to the park, walking the dogs, and planning BBQ's"); AR 1994.

DISPOSITIVE ORDER - 22

These errors impacted the ALJ's nondisability decision as the ALJ did not accept Dr. Hale's occasional-fingering limitation. Plus, the vocational expert during the 2023 hearing testified that each of the identified jobs required bilateral frequent handling and fingering.[65] Because Dr. Hale's opinion is the only physical medical opinion of record, his occasional-fingering limitation is uncontested and is to be credited for the period of May 20, 2013, to April 5, 2017. Benefits are to be awarded for this closed period.

For the remaining period of April 6, 2017, to August 5, 2024, the Court finds the ALJ again erred. In March 2022 and 2023, Plaintiff was observed with finger tenderness and popping, which is consistent with her testimony that she continued to experience hand symptoms, notwithstanding her report of improvement in April 2017. The ALJ must resolve whether, during all or a portion of this later period,

---

[65] AR 1955. Likewise, the vocational expert at the hearing in 2021 testified that most of the occupations with no public contact and occasional contact with coworkers requires frequent or constant handling and fingering. AR 1927.

DISPOSITIVE ORDER - 23

Dr. Hale's occasional-fingering limitation is consistent with and supported by the evidence.

Complicating this assessment is that more than three years have passed since the most recent treatment record pertaining to Plaintiff's hands. Even though this matter was remanded multiple times and the Appeals Council referenced that a consultative examination may be warranted, no new consultative examination, either physical or mental, was obtained.[66] A new physical consultative examination is necessary to provide context and perspective as to Plaintiff's bilateral manipulative abilities, along with other exertional abilities, for the period April 6, 2017, to August 5, 2024. The consultative examiner is to be given, minimally, a copy of the November 2 and 15, 2016, March 15, 2022, October 11, 2022, March 10, 2023, and May 16, 2023 treatment records.[67]

---

[66] AR 146. *See* 20 C.F.R. §§ 416.912, 416.917.

[67] AR 809, 1491–93, 1653–56, 1610–18, 1659–63, 1989–91.

DISPOSITIVE ORDER - 24

6.    Conclusion

The ALJ's discounting of Dr. Hale's occasional-manipulation limitation is supported for the period before May 20, 2013. However, it is not supported for the period on and after May 20, 2013. Dr. Hale's occasional-fingering limitation is credited for the period May 20, 2013, to April 5, 2017. Remand for further proceedings, including a physical consultative examination, is needed as to the remaining at-issue period of April 6, 2017, to August 5, 2024.

**B.    Non-Exertional Limitations: Plaintiff establishes consequential error.**

Plaintiff challenges the ALJ's decision to give little weight to Dr. McClelland's and Dr. Haloman's consultative psychological opinions. Contrary to the Commissioner's argument otherwise, the ALJ's evaluation of these opinions is not based on specific and legitimate reasons supported substantial evidence. A more recent consultative psychological examination is necessary.

1.    Mental-Health Opinions[68]

a.    *Dr. McClelland*

In May 2011, Dr. McClelland examined Plaintiff and reviewed the provided mental-health notes.[69] He diagnosed Plaintiff with severe, recurrent major depressive disorder and PTSD.[70] He opined that Plaintiff should not manage funds as she seemed cognitively impaired; her abilities to accept instructions from supervisors and interact with coworkers and the public were impaired; and she would struggle

---

[68] Other mental-health opinions of record include Ms. Mondragon's 2009 opinion that Plaintiff has difficulty concentrating; Ms. Shoemaker's 2010 and 2011 opinions that Plaintiff would have difficulty following instructions, concentrating, and interacting with others; and Dr. Kraft's October 2015 opinion that Plaintiff needed additional time to adapt and help with planning and scheduling. AR 86–91, 110–16, 689–94.

[69] AR 504–08.

[70] AR 507.

without special or additional instructions and with attendance, completing a workday, and workplace stress.[71]

### b.    _Dr. Haloman_

In September 2023, Dr. Haloman conducted a mental-health examination, including a review of a January 2011 depression evaluation and mental-health discharge summary, June and July 2013 treatment notes for back and hand pain, and a function report.[72] She diagnosed Plaintiff with depressive disorder, anxiety disorder, and suspected borderline intellect; found Plaintiff capable of managing funds; and opined that Plaintiff would benefit from clear and simple instructions and would need more supervision to stay on task.[73]

### 2.    The ALJ's findings as to the mental-health opinions

The ALJ gave little weight to Dr. McClelland's opined limitations because (1) the opinion was issued more than two years before the at-issue period; (2) there was no basis for the PTSD diagnosis because

---

[71] AR 508.

[72] AR 618–25.

[73] AR 623–24.

DISPOSITIVE ORDER - 27

there was little mention of childhood abuse in the record; (3) Dr. McClelland was not aware of Plaintiff's gym attendance, dog walking, and family engagement; (4) his opinion was not supported by his examination; and (5) Plaintiff did not regularly report panic attacks.[74]

The ALJ gave little weight to Dr. Haloman's opinion because (1) it was not established that Plaintiff had borderline intellect; (2) Plaintiff's reports of hallucinations and panic attacks appear to be raised to seek benefits and were not consistent with treatment or other reports; (3) Plaintiff did not mention child abuse; (4) Plaintiff reported that she delegates tasks to her children; and (5) treatment records after 2013 show improvement with minimal treatment.[75]

### 3.    Analysis of the ALJ's findings

#### a.    *Period from January 9, 2013–May 20, 2013*

As set forth above, benefits are to be awarded on remand for a closed-period beginning May 20, 2013. As a result, there remains about

---

[74] AR 1683–84.

[75] AR 1684.

DISPOSITIVE ORDER - 28

four months at the beginning of the alleged disability period, for which analysis of the mental-health opinions is important. As is explained more below, none of the ALJ's reasons for discounting Dr. McClelland's and Dr. Haloman's opinions about Plaintiff's need for more supervision are supported by substantial evidence for this early period, as any improvement found by the ALJ was after 2013. Therefore, their opinions are to be credited for the period of January 9, 2013–May 20, 2013, and benefits are awarded for this period as well.

### b.    *Period from April 6, 2017, to August 5, 2024.*

Because benefits are to be awarded on remand for the earlier part of the at-issue period, review of how the ALJ evaluated Dr. McClelland's and Dr. Haloman's opinions is focused on this later period. The ALJ's reasons for discounting these opinions are addressed.

### i.    *Dr. McClelland*

First, consistent with the prior district court's ruling, that Dr. McClelland issued his opinion in 2011 is not reason to discount his opinion as to Plaintiff's long-standing mental-health symptoms.[76]

---

[76] AR 1050.

DISPOSITIVE ORDER - 29

Second, in addition to reporting childhood abuse to Dr. McClelland, Plaintiff reported childhood abuse to treating providers.[77] Thus, the ALJ's finding that there was no basis in the record to support Dr. McClelland's PTSD diagnosis or that Plaintiff offered inconsistent statements about prior abuse is not supported by substantial evidence.

Third, as to whether Dr. McClelland's opinion is supported by his examination, the ALJ made no mention that Dr. McClelland noted that Plaintiff "was very slow in answering questions and took a strong effort on her part to focus on the tasks below."[78] Without mentioning this observation by Dr. McClelland, which he noted as a basis for his opinion that she would struggle with attendance and completing a workday, the ALJ's decision to discount Dr. McClelland's opinion as not supported by his examination is not supported by substantial evidence,

---

[77] AR 472, 483, 685, 1568.

[78] AR 506.

DISPOSITIVE ORDER - 30

considering this observed slowness, along with the observed blunted and depressed affect and 2/3 five-minute recall.[79]

The ALJ's fourth reason—that Dr. McClelland's opinion was inconsistent with Plaintiff's minimal and inconsistent complaints of panic attacks—is also not supported by the record. Plaintiff reported panic attacks to treating providers and during the evaluation with Dr. Haloman, and she had an observed panic attack while at a hospital.[80] Moreover, Plaintiff reported to treating providers that she had difficulty leaving the house, and her therapy goals focused on improving her ability to leave the house.[81]

Finally, the ALJ gave unfair weight to the statements in counseling records, twelve years after Dr. McClelland's evaluation, that Plaintiff went to the gym, walked her dogs, and engaged with her family. These activities could be performed consistent with Plaintiff's reports that she does not feel comfortable interacting with other people

---

[79] AR 506–08.

[80] AR 468, 515, 619, 636, 700, 856.

[81] AR 847, 1480, 1619.

besides her family, as she only went to the gym with her daughters and walking her dog did not require interacting with strangers.[82] Plus, these 2023 therapy-driven activities reflect that Plaintiff was making progress in reducing her anxiety, and should not be used to discount Dr. McClelland's opinion issued the prior decade. For instance, in 2014, following her son's shooting, she was unable to walk to the park, sit outside, or go to the grocery store without fear and worry, and in 2016, after her daughter's death, she mentioned to a treating provider that she missed appointments due to difficulties leaving the house.[83]

Accordingly, the ALJ's evaluation of Dr. McClelland's opinion is not based on specific and legitimate reasons supported by substantial evidence.

### ii.  Dr. Haloman

---

[82] AR 1619, 1716–17. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record).

[83] AR 632, 675; 847; *see also* AR 636.

DISPOSITIVE ORDER - 32

First, regardless of whether Plaintiff had an intellectual disability diagnosis, Dr. Haloman observed Plaintiff with a poor fund of knowledge, concrete and quite simple thinking, and difficulty with basic tasks.[84] The ALJ failed to explain why these observations do not support Dr. Haloman's opinion that Plaintiff would need prompting and redirection and special or additional instruction or supervision to complete tasks.

Second, as mentioned above, contrary to the ALJ's finding, Plaintiff did complain of panic attacks and a panic attack was observed by a treating provider.[85] While the ALJ is correct that the record has little information about hallucinations, Dr. Haloman did not base her opined limitations on reported hallucinations; instead, her pace and supervision limitations were based on Plaintiff's "need[ for] a lot of prompting and redirection . . . and difficulty understanding instructions."[86]

---

[84] AR 621–24.

[85] AR 468, 515, 619, 636, 700, 856.

[86] AR 624.

DISPOSITIVE ORDER - 33

As to whether Plaintiff told Dr. Haloman about being abused as a child, Dr. Haloman noted that Plaintiff's "mom was neglectful" and that Plaintiff had no supervision as a child.[87] Plus, Dr. Haloman reviewed records mentioning that Plaintiff reported being abused by the father of six of her children and she was observed with bruising on her arm.[88] Thus, Dr. Haloman knew that Plaintiff had suffered abuse and neglect, either at the hands of her mother or a significant other. Other treatment records report abuse as well: "her mother was an alcoholic, neglected and physically abused her when growing up,"[89] "recalled several childhood memories of her mother which involved beatings and severe abuse,"[90] and "Family of origin relationships were marked by neglect and abandonment. . . . There is a family history of violence. Her brother and her mother. Discipline consisted of physical

---

[87] AR 469–70, 504, 636, 700.

[88] *See* AR 470, 518–22.

[89] AR 472.

[90] AR 483.

DISPOSITIVE ORDER - 34

abuse by mother. Mother and father were alcoholic."[91] Substantial evidence does not support a finding that Plaintiff provided inconsistent reports pertaining to past abuse.

The ALJ also found Dr. Haloman's opined limitations inconsistent with Plaintiff's ability to delegate household tasks to her older children and supervise them, finding this "suggests she is able to take on more responsibility than alleged."[92] However, Dr. Haloman was aware that Plaintiff "delegate[d] full-time tasks such as cooking with her children."[93] Dr. Haloman still opined that Plaintiff would need "a lot of prompting and redirection" and that she could not "perform work activities on a consistent basis without special or additional instructions."[94] This opinion was shared by Dr. McClelland, who was also aware that Plaintiff "tells her children what to do," but still opined that Plaintiff would struggle with being productive without special or

[91] AR 685.

[92] AR 1684.

[93] AR 624.

[94] AR 624.

DISPOSITIVE ORDER - 35

additional instructions.[95] Likewise, even Dr. Kraft opined, notwithstanding Plaintiff's delegation of tasks to her children, that she would having difficulty adapting to routine and needed help with goals and plans.[96] Thus, on this record, that Plaintiff could delegate household tasks to her older children is not a specific and legitimate reason supported by substantial evidence to discount Dr. Haloman's opinion that Plaintiff would need redirection and additional supervision if she were to consistently perform a fulltime job.

Finally, the ALJ discounted Dr. Haloman's opinion because treatment records after 2013 show reported improvement in mental health and that she had minimal treatment.[97] These findings are in part supported by substantial evidence. At times, Plaintiff's mental-health treatment could be considered minimal; however, at other times, she regularly engaged in treatment: in 2011; then again for a few months in 2014 after her son's shooting; then in 2017–18 after her

---

[95] AR 506, 508.

[96] AR 114–16.

[97] AR 1684.

DISPOSITIVE ORDER - 36

daughter's death; and in 2023, with the last mental-health record being from May 2023.[98] The record reflects that Plaintiff participated in mental-health treatment following a significant triggering event but at other times as well. The ALJ failed to evaluate whether Plaintiff's minimal treatment was caused by her own mental-health struggles, including reported difficulty attending appointments outside of her home: "She is interested in trying OMT but states she is overwhelmed with appointments and often misses because she does not feel comfortable leaving the house sometimes."[99]

### c.    *On remand*

On remand, the ALJ must consider whether Plaintiff had good cause to not consistently engage in mental-health treatment. Plus, the ALJ must consider whether Plaintiff achieved sustained mental-health improvement. To aid the ALJ's re-evaluation, a psychological consultative examination is to be ordered and the examiner asked to

---

[98] *See, e.g.*, AR 468–93, 632–69, 675–94, 833–35, 1490–81, 1619–21, 1992–94.

[99] AR 847.

offer an opinion as to Plaintiff's mental-health functioning since April 6, 2017. The examiner is to be given a copy of Dr. McClelland's and Dr. Haloman's reports, along with the records they reviewed if available, and a sampling of behavioral mental-health treatment records since April 6, 2017.

**C.     Remand**

Benefits are to be awarded for the closed period of January 9, 2013, to April 5, 2017. For this period, the record is fully developed as to Plaintiff's hand and mental impairments and symptoms and no further administrative proceedings are needed.[100]

As to the later period of April 6, 2017, to August 5, 2024, the Court, reluctantly, declines to award benefits.[101] The Court's reluctance is based on that the Commissioner has had ample opportunity to develop this record during each prior remand, such as by ordering physical and psychological consultative examinations or obtaining

---

[100] *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

[101] *See id.* at 1099.

DISPOSITIVE ORDER - 38

testimony from a medical expert, and the Commissioner chose not to do so.[102]

Nonetheless, because newer physical and psychological consultative examinations will assist in the evaluation of the medical evidence as to the sole-remaining period of April 6, 2017, to August 5, 2024, the Court remands this matter for further proceedings.

On remand, the ALJ may not discount the herein-challenged prior medical opinions because of staleness, given that any purported staleness is the direct result of the Commissioner's poor and slow handling of this disability claim. In addition, when evaluating the consistency of a mental-health medical opinion against the treatment record, the ALJ is to rely more heavily on mental-health treatment

---

[102] "The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up). This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence. *Id.* at 1184.

DISPOSITIVE ORDER - 39

records rather than treatment notes from appointments solely for a physical condition.

### IV.    Conclusion

Plaintiff establishes the ALJ erred and that an award of benefits is appropriate for the identified closed-period and that a re-evaluation is appropriate for the later remaining period. The ALJ's determination that Plaintiff is disabled as of August 6, 2024, still controls and is not altered by this remand.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for immediate calculation and award of benefits** for the period January 9, 2013–April 5, 2017.

2.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)** for the period April 6, 2017–August 5, 2024.

3.     The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 14 and 16**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 22nd day of May 2026.

_____

EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 41